Wardlaw, J.
delivered the opinion of the Court.
The essential part of the plea of plene administravit is, that the defendant has no goods which were of the testator or intestate at the time of his death, in the hands of the defendant as executor or administrator to be administered, nor had at the commencement of the suit, nor ever since: that he hath fully administered, seems superfluous. (2 Williams’ Executors, 1201 — 3.) The third plea in this case seems to be embraced in the second.
When the plaintiff to a plea of plene administravit replies that the defendant had assets, whereupon issue is joined, the burden is on the plaintiff, who must prove that assets existed, or ought to have existed, at the time mentioned in the plea. Any devastavit which has caused a failure of assets, may on this issue be given in evidence by the plaintiff, and the jury must find assets to the amount of the failure, and .not find a devastavit. (2 Williams’ Executors, 12L2.) Nothing in the pleadings here, then, hindered the evidence which the plaintiff offered.
But did the plaintiff show a devastavit which produced a failure of legal assets 1
“All those goods and chattels, actions and commodities, which were of the deceased, in right of action or possession, as his own, and so continued to the time of his death, and *201 which, after his death, the executor or administrator doth get into his hands, as duly belonging to him in the right of his executorship or administratorship'; and all such things as do come to the executor or administrator in lien or by reason of that, and nothing else, shall be said to be assets in the hands of the executor or administrator, to make him chargeable to a creditor or legatee.” (Shep. Touch. 496.)
In Read’s Case, 5 Co. 34, it was resolved “that the rightful executor shall not be charged but with the goods which come to his hands after he takes upon him the charge of the will.”
We do not propose at all to enquire what degree of wilfulness or blameable default must enter into the act of negligence or careless administration which has defeated the rights of creditors, to constitute such act a devastavit: but treating assets which should have been received as assets received, for the present purpose it is enough to say that the character of the act here charged as a devastavit has not been investigated. Supposing it to have been wilful and blameable, was it such as to disprove the plea of plene administravit ? To disprove the plea, a creditor, suing an executor in an action at law, can bring forward in evidence only legal assets. (2 Williams’ Executors, 1033.) • Without attempting here any general distinction between legal and equitable assets, or holding that all assets are necessarily equitable which a creditor cannot come at without the aid of a Court of Equity, there seems no difficulty in holding that the fund concerning which negligence is here imputed to the defendant, did not constitute legal assets.
The intestate owned at his death an undivided share of negroes, which were to be divided upon the happening of an event not then come. After the event, and before -the grant of administration, the negroes were sold, and thus the intestate’s goods were wasted and eloigned. As to the defendant, subsequently appointed administrator, the sale and the proceedings under which it was made, were res inter alios: he had no legal claim upon the fund thence arising, nor-any right of action (independent of his right to pursue the negroes eloigned,) which could be said to.be a thing come to him in lien or by reason of his intestate’s goods. If he had chosen to confirm the sale, and had presented his equitable rights to the Court of Equity before distribution of the fund, it may be that under the principles recognized in the cases of Shubrick v. Shubrick, 1 McC. Ch. Rep. 406, and Trescot v. Trescot, Ib. 430, the distribution of the fund might have been stayed, and justice to the creditors of John W. Sylvester have been *202 saved. But it is seen that the order of the Court of Equity directed that the notes taken at the sale should be transferred in payment to the persons between whom the -fund was directed to be distributed: to what extent distribution had been made before the grant of administration we know not, nor what obstacles might have existed against the establishment of the equity which now seems to have been plain on the part of the administrator. No fraud or collusion concerning the order in Equity is shown against the defendant. It would then be rash in this Court to hold the defendant liable for imputed negligence in regard to an equitable right supposed to have been in him as administrator, when that right has been wholly defeated by the action of the Court of Equity, and that Court is open to all who would enquire into the propriety of its proceedings, or of defendant’s conduct in relation to them.
The share of his ward recovered by the defendant stands upon the same footing as the remainder of that portion of the fund which went to the next of kin of John W. Sylvester. This share the defendant received as guardian; for it, he is liable to account, as guardian: how much he may have already expended as guardian, we know not. Because it is in his hands, notwithstanding his accountability, to make him liable for it to creditors, would, under the circumstances, be just the same as to make him liable because he had not received it. The motion is dismissed.
SECOND CASE.

Shannon & McDowell v. L. H. Dinkins, administrator.

The statement of the case, grounds of appeal, and opinion of the Court, are the same as in the preceding case. Motion dismissed also.
Richardson, J. O’Neall, J. Evans, J. and Frost, J. concurred.
Withers, J. having been of counsel, gave no opinion.

Motion refused.